UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| PEABODY ENERGY CORP., et al., | ) | Bankruptcy Case No. 16-42529-399 |
| | ) | |
| Reorganized Debtors, | ) | |
| _____ | ) | |
| | ) | |
| COUNTY OF SAN MATEO, | ) | |
| CITY OF IMPERIAL BEACH, | ) | |
| COUNTY OF MARIN, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | Case No. 4:17 CV 2886 RWS |
| v. | ) | |
| | ) | |
| PEABODY ENERGY CORP., | ) | |
| | ) | |
| Appellee. | ) | |

## **MEMORANDUM AND ORDER**

Appellants County of San Mateo, City of Imperial Beach, and County of

Marin (Appellants) filed this appeal seeking to overturn the bankruptcy court's

order that they dismiss their lawsuits against the Reorganized Peabody Energy

Corporation (PEC). The Bankruptcy Court[1] ordered that Appellants dismiss their

complaints against the Reorganized PEC on the grounds that the causes of action in

those complaints constituted dischargeable claims that Appellants failed to file

_____

[1] United States Bankruptcy Judge Barry S. Schermer.

before the deadline the bankruptcy court set. After a review of the briefs and the record in this matter, I find that the bankruptcy court reached the correct legal conclusion regarding the First Causes of Action in Appellants' complaints and did not abuse its discretion regarding the remaining causes of action. As a result, I will affirm the bankruptcy court's order.

## I.    Background

Debtors Peabody Energy Corporation and its affiliates filed for Chapter 11 bankruptcy protection in 2016 in the United States Bankruptcy Court for the Eastern District of Missouri. The bankruptcy court set October 11, 2016 as the deadline for governmental units to assert claims that arose prepetition. On March 17, 2017, the bankruptcy court entered its order confirming PEC's Plan of Reorganization (Chapter 11 Plan). On April 3, 2017, the Chapter 11 Plan went into effect and Reorganized PEC emerged from bankruptcy. The Chapter 11 Plan established the deadline of May 3, 2017 for all creditors to assert claims against PEC that arose between the filing of the bankruptcy petition and the Plan's effective date.

Appellants are three governmental entities in California. None of the Appellants filed a claim in PEC's bankruptcy proceeding. Instead, on July 17, 2017, shortly after PEC's plan went into effect, Appellants each filed a separate, nearly identical, lawsuit in three separate California state courts. The lawsuits

sought damages and injunctive relief from multiple fossil fuel industry defendants for their role in contributing to global warming. PEC is a named defendant in these three lawsuits. The complaints allege that the defendants are responsible for greenhouse gas emissions between 1965 and 2015. The complaints seek compensatory damages, equitable relief, punitive damages, attorneys' fees, disgorgement of profits, and cost of suit.

Each of Appellants' eight causes of action is the same, and they are presented in the same order across the three complaints: The First Cause of Action in each complaint ("First Causes of Action") brings a public nuisance action on behalf of the People of the State of California. The remaining causes of action are brought on behalf of the government entities themselves and are as follows: (Second) Public Nuisance; (Third) Strict Liability—Failure to Warn; (Fourth) Strict Liability—Design Defect; (Fifth) Private Nuisance; (Sixth) Negligence; (Seventh) Negligence—Failure to Warn; (Eighth) Trespass. These lawsuits were removed to federal court.

On August 28, 2017, Reorganized PEC filed a motion in the bankruptcy court seeking an order enforcing the discharge and injunction provisions of its Chapter 11 Plan. Specifically, PEC asked the bankruptcy court to enjoin Appellants from prosecuting their causes of action against PEC and to require Appellants to dismiss those actions with prejudice. The bankruptcy court found

Appellants' claims against PEC had been discharged in bankruptcy. The

bankruptcy court granted Reorganized PEC's motion, enjoined Appellants from

prosecuting the PEC causes of action, and directed Appellants to dismiss the PEC

causes of action with prejudice. Appellants appealed the bankruptcy court's

decision to this Court.

## II.    Legal Standard

This court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a)(1).

Appellants filed a timely notice of appeal.

"When a bankruptcy court's judgment is appealed to the district court, the

district court acts as an appellate court and reviews the bankruptcy court's legal

determinations de novo and findings of fact for clear error." Fix v. First State Bank

of Roscoe, 559 F.3d 803, 808 (8th Cir. 2009) (internal quotation and citation

omitted). Issues committed to the bankruptcy court's discretion are reviewed for an

abuse of that discretion. In re Zahn, 526 F.3d 1140, 1142 (8th Cir. 2008). A

bankruptcy court's interpretation of its own prior orders, including a confirmed

Chapter 11 plan, is committed to the discretion of the bankruptcy court and is

reviewed for abuse of discretion. See, e.g., In re Dial Bus. Forms, Inc., 341 F.3d

738, 744 (8th Cir. 2003). A bankruptcy court abuses its discretion when it fails to

apply the proper legal standard or if it bases its order on findings of fact that are

clearly erroneous. Id.

## III.   Discussion

Appellants raise four issues on appeal, which fall into two general categories. The first issue requires me to determine whether Appellants' First Causes of Action, which sought relief under a statutory remedial provision that only allowed them to seek abatement, raised claims that were discharged by the Chapter 11 Plan and Confirmation Order.  The remaining issues pertain to whether Appellants' causes of action were exempt from discharge under certain exceptions included in the Chapter 11 Plan.

The Chapter 11 Plan contains provisions ("EPA Settlement Provisions") that clarify the extent to which Environmental Law claims and actions brought pursuant to a government entity's police powers are exempt from discharge under the Plan. Those provisions came after "significant negotiations between the Debtors, the U.S. Environmental Protection Agency, the Department of the Interior, other governmental entities, and many Indian Nations as part of a settlement in connection with the plan confirmation process (EPA Settlement)." [Memorandum Opinion, ECF Doc. No. 18-2, A0752, 0757]  Appellants argue those provisions apply to their claims and protect them from discharge.

### a.  Government Bar Date

As an initial matter, Appellants did not file a proof of claim before the established deadline of October 11, 2016.  [See Memorandum Opinion, ECF Doc.

No. 18-2, A0752, 0759]  They filed their complaints against PEC more than three months after the Effective Date of the Reorganized PEC's Chapter 11 Plan.  The complaints they filed allege that PEC's activity between the years 1965-2015 contributed to climate change and has imposed significant costs on Appellants. [See, e.g., Marin Complaint, Exhibit C, ECF Doc. No. 18-2, A0619, 0695]

Appellants "do not dispute that they received notice of the Debtors' bankruptcy cases, and the other operative deadlines in the Debtors' bankruptcy cases."  [Memorandum Opinion, ECF Doc. No. 18-2, A0752, 0759]  They contend that they were not bound by the deadline for governmental units to file claims because their complaints bring claims that were exempted from discharge under PEC's confirmed Chapter 11 Plan.  I address those arguments more fully below in Parts III(b) and (c).  Because I find that Appellants' causes of action were not exempt, and because Appellants chose not to file a proof of claim before the deadline, I also find that their claims were discharged under the Plan and Confirmation Order.

**b.  Discharge of the First Causes of Action**

I review *de novo* the question of whether Appellants' First Causes of Action constitute discharged claims under the PEC Chapter 11 Plan. In the First Causes of Action, Appellants seek injunctive relief pursuant to California's Public Nuisance

Enabling Statute. I find that Appellants' First Causes of Action are claims that were discharged under the Chapter 11 Plan.

The Bankruptcy Code defines the term "claim" as either a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." 11 U.S.C. § 101(5)(A, B). The Code's use of the phrase "right to payment" "is usually referring to a right to payment recognized under state law." Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 450–51 (2007). Under the Bankruptcy Code, a debtor's breach of a state statutory provision constitutes a breach of performance. Ohio v. Kovacs, 469 U.S. 274, 279 (1985) ("There is no indication in the language of the statute that the right to performance cannot be a claim unless it arises from a contractual arrangement.").

Appellants argue that California's Public Nuisance Enabling Statute only enables them to seek injunctive relief, and they do not have a separate right to payment as a result of PEC's alleged conduct. Accordingly, they argue, their request for injunctive relief is not a claim under the Bankruptcy Code.

While it may be the case that Appellants cannot seek damages under the Public Nuisance Enabling Statute for actions they brought in the name of the People of the State of California, the fact that Appellants can, and did, include a

separate cause of action for damages in their complaints is evidence that Appellants' First Causes of Action also constitute discharged Claims.

In their First Causes of Action, Appellants seek equitable relief under the Public Nuisance Enabling Statute (Cal. Civ. Proc. Code § 731) for violation of California's public nuisance law (Cal. Civ. Code § 3480). Specifically, Appellants ask the court to order Reorganized PEC to abate the nuisance they allegedly caused. [See, e.g., Marin Complaint, Exhibit C, ECF Doc. No. 18-2, A0619, 0701-04] Next, in their Second Causes of Action, Appellants seek damages under the California Civil Code, which defines public nuisance and provides remedies. [See, e.g., Marin Complaint, Exhibit C, ECF Doc. No. 18-2, A0619, 0704; Cal. Civ. Code §§ 3479-80; 3491]

The two causes of action arise from a breach of the same underlying statute, Section 3479 of the California Civil Code, which describes actionable nuisances. Next, Section 3480 defines when a nuisance under Section 3479 becomes a public nuisance. Once a person or entity breaches Sections 3479 or 3480, injured plaintiffs have a variety of remedies they can pursue. For example, individual plaintiffs can sue under Section 3493 and are eligible to seek equitable and legal relief. Those individuals may also sue under the Public Nuisance Enabling Statute and seek equitable and legal relief. See Cal. Civ. Proc. Code § 731 ("An action may be brought by any person whose property is injuriously affected, or whose

personal enjoyment is lessened by a nuisance, as defined in Section 3479 of the

Civil Code, and by the judgment in that action the nuisance may be enjoined or

abated as well as damages recovered therefor.").

Governmental units also have legal and equitable remedies available to them

when a person or entity causes a public nuisance within their boundaries.  They can

sue for equitable relief, damages, or criminal sanction under Section 3491 of the

California Civil Code, or they can sue for equitable relief under the Public

Nuisance Enabling Statute.   See Cal. Civ. Proc. Code § 731 ("A civil action may

be brought in the name of the people of the State of California to abate a public

nuisance, as defined in Section 3480 of the Civil Code, by the district attorney or

county counsel of any county in which the nuisance exists, or by the city attorney

of any town or city in which the nuisance exists.").  A government plaintiff may

bring actions under the Public Nuisance Enabling Statute and the California

Nuisance Statute at the same time. See id. ("Each of those officers shall have

concurrent right to bring an action for a public nuisance existing within a town or

city.").

Equitable and legal relief were both available to Appellants for PEC's

alleged breach of the California nuisance statute.  This means Appellants'

equitable claims arising from that breach were discharged by the confirmed

Chapter 11 Plan. Under the Bankruptcy code, claims are defined by what remedies Appellants could have sought, not only the remedies Appellants actually sought.

Appellants contend that PEC's alleged breach of the public nuisance statute did not give rise to both equitable relief and damages, because the specific statutory provision on which their First Causes of Action rely prohibits Appellants from using it to obtain damages when they are suing on behalf of the People of the State of California. They cite a number of California cases that make it clear that when government plaintiffs sue on behalf of the People of the State of California, they can only seek equitable relief. Appellants also cite cases from other circuits that stand for the proposition that a plaintiff's quest for equitable relief is not a claim simply because the act that harmed the plaintiff gives rise to a separate cause of action for damages under another statutory scheme. These cases are not on point for the issue at hand. In this case, the same alleged breach of California's public nuisance statute did indeed give rise to both equitable relief and a right to payment for these Appellants. Under the Bankruptcy Code, the equitable relief they seek is therefore a claim. <u>See</u> 11. U.S.C. § 101(5)(B).

### c. Discharge of the Remaining Causes of Action

The second, third, and fourth issues presented pertain to the bankruptcy court's ruling on the remaining causes of action in Appellants' complaints. The issues require me to determine whether Appellants' causes of action were exempt

from discharge under two EPA Settlement Provisions that prevent the discharge of certain kinds of claims. The bankruptcy court interpreted the confirmed Chapter 11 Plan and ruled that Appellants' claims do not meet the criteria set forth in the EPA Settlement Provisions.

Appellants concede that I should review the second and fourth issues for abuse of discretion, but they contend that I should review *de novo* the question of whether the PEC causes of action constitute an exercise of their "police power." I disagree for the reasons described below in Part III(c)(ii)(1), and I review the bankruptcy court's analysis of the EPA Settlement Provisions for abuse of discretion.

### i. Section A of the EPA Settlement Provisions

The first category of claims exempt from discharge under the Chapter 11 Plan comprises specific claims that arise under "Environmental Law." Those claims include

> any liability or any obligation to, or any claim or any cause of action by, a Governmental Unit . . . under any applicable Environmental Law to which any Reorganized Debtor is subject to the extent that it is the owner, lessee, permittee, or operator of real property or a mining operation after the Effective Date (. . . but only to the extent applicable Environmental Law imposes such claim or cause of action on such Reorganized Debtor in its capacity as the self bond guarantor, owner, lessee, permittee or operator of real property or a mining operation after the Effective Date).

Chapter 11 Plan § V.E.6.a.i.A, ECF No. 18-1, A0075, 0139-0140. The Plan defines "Environmental Law" as "all federal, state, and local statutes, regulations,

and ordinances concerning pollution or protection of the environment, or environmental impacts on human health and safety," lists specific examples of federal environmental statutes, and also includes "any state or local equivalents of the foregoing." Plan § I.A.92, ECF No. 18-1, at A0088.

The bankruptcy court considered the Plan's definition of "Environmental Law" and the operation of that definition in the Environmental Law exception provision of the plan in the context of their origin: they were added as a part of a settlement with the EPA and other governmental entities. The bankruptcy court reasonably found that neither Appellants' statutory causes of action, nor those based on common law, fit within the category of claims the Chapter 11 Plan exempted from discharge.

## 1.    Statutory Causes of Action

Interpreting the Chapter 11 Plan, the bankruptcy court found that the statutory California nuisance actions in Appellants' First, Second, and Fifth Causes of Action were not brought under Environmental Law and were therefore not exempted from discharge on those grounds. The bankruptcy court's interpretation of "Environmental Law" was not an abuse of discretion.

While the list of environmental statutes the Chapter 11 Plan offered was not exhaustive, it did provide important context for what the Plan meant by "applicable Environmental Law." As the bankruptcy court explained, "the Plan clause

requiring a link to 'pollution or protecting of the environment, or environmental impacts on human health and safety' is informed by the list of specific federal statutes that follow it and relate to the physical environment upon which PEC mines." [Memorandum Opinion, ECF Doc. No. 18-2, A0752, 0762] It was reasonable for the bankruptcy court to conclude that California's general public nuisance statute was not an Environmental Law, especially given the context that the enumerated statutes provided.

California's nuisance law defines a nuisance broadly. Under the law, a nuisance is "anything which is injurious to health," "an obstruction to the free use of property," or something that "unlawfully obstructs the free passage or use, in the customary manner, or any navigable lake, or river . . . or any public park, square, street, or highway." Cal. Civ. Code § 3479. While certain environmental hazards may also be nuisances, the nuisance statute is not itself an Environmental Law as defined by the statute.

A case Appellants cite for another argument in their brief provides a helpful illustration here. In People ex rel. Gow v. Mitchell Bros.' Santa Ana Theater, the Santa Ana City Attorney "brought an action against the owners and operators of the Mitchell Brothers' Santa Ana Theater to abate a public nuisance." 114 Cal. App. 3d 923, 926-27, rev'd on other grounds sub nom. California ex rel. Cooper v. Mitchell Bros.' Santa Ana Theater, 454 U.S. 90 (1981). The public nuisance that

13

required abating in <u>Mitchell Bros.'</u> was not polluting the environment nor was it an environmental impact on human health and safety. Rather, it was the theatre's display of "obscene" films. <u>Id.</u> The display of obscene films does not concern "pollution or protection of the environment, or environmental impacts on human health and safety," especially as compared to the Clean Air Act, the Atomic Energy Act, the Safe Drinking Water Act, or the Surface Mining Control and Reclamation Act. Plan § I.A.92, ECF No. 18-1, at A0088.

The bankruptcy court did not abuse its discretion when it found that the First, Second, and Fifth Causes of Action for statutory nuisance were not exempt from discharge under Section A of the EPA Settlement provisions. Though California's nuisance statutes may sometimes be helpful tools for plaintiffs seeking remedy for environmental hazards that have harmed them, the nuisance statutes do not inherently "concern pollution or protection of the environment, or environmental impacts on human health and safety" like the examples the Chapter 11 Plan enumerates. <u>See id.</u> (providing additional examples of statutes that meet the definition of "Environmental Law"). To find otherwise would stretch the definition of "Environmental Law" beyond the limits that the Plan sets.

### 2. Common Law Causes of Action

The Third, Fourth, Sixth, Seventh, and Eighth Causes of Action in Appellants' complaint against PEC are brought under the common law.

Appellants argue they meet the Plan's carve-out for "equivalents" of "state and local statutes, regulations, and ordinances concerning pollution or protection of the environment, or environmental impacts on human health and safety." The bankruptcy court's conclusion that the Third, Fourth, Sixth, Seventh, and Eighth Causes of Action were discharged under the Chapter 11 Plan was not an abuse of discretion.

Regarding these causes of action, the bankruptcy court engaged in a textual analysis to show that the Chapter 11 Plan's incorporation of the phrase "state or local equivalents of the foregoing" referred to the enumerated environmental statutes directly antecedent to the phrase. The bankruptcy court concluded that the Plan's exemption for actions brought under "Environmental Law" also exempts actions brought under state or local equivalents of the specific environmental statutes the Plan lists.

Appellants argue that the bankruptcy court incorrectly applied the last antecedent rule to the Chapter 11 Plan. However, the bankruptcy court's analysis was reasonable and certainly not an abuse of discretion. Furthermore, the bankruptcy court's ruling explains that the last antecedent analysis, while helpful, is not dispositive. Even if the phrase "state or local equivalent" referred to the broader class of "all federal, state, and local statutes, regulations, and ordinances concerning pollution or protection of the environment, or environmental impacts

on human health and safety," the common law causes of action Appellants asserted in their initial complaints would still not meet the definition. [Memorandum Opinion, ECF Doc. No. 18-2, at A0764]

The common law causes of action assert claims for strict liability—failure to warn, strict liability—design defect, negligence, negligence—failure to warn, and trespass. These are plainly not the equivalent of statutes, regulations, and ordinances concerning the environment. Like the statutory causes of action for nuisance, these common-law equivalents may be sometimes used to remedy environmental hazards, but they do not themselves concern the environment.

The statutes Appellants cite in their opening brief provide support for this conclusion. For example, Appellants argue that Connecticut's product liability statute, which protects citizens from defective products, "concerns" or "relates to" "environmental impacts on human health and safety." [See Appellants' Opening Brief, ECF No. 18, at 37-38] They cite the Merriam-Webster Online Dictionary's definition of "environment" as "the circumstances, objects, or conditions by which one is surrounded," and argue that a products liability statute fits in with the Chapter 11 Plan's definition of "Environmental Law." Id. at 37. However, it is the Chapter 11 Plan's definition of "Environmental Law," and not Merriam-Webster's definition of "environment," that determines whether these causes of action were discharged. According to the bankruptcy court, the Plan's definition did not

contemplate exempting ordinary common law tort actions from discharge. The bankruptcy court's interpretation was correct. Section A of the EPA Settlement Provisions does not save these common law claims from discharge.

### 3. Post-Effective Date Relationship to Real Property or Mining Operation

The bankruptcy court's determination that Appellants' First, Second, and Fifth Causes of Action did not fit within the scope of the plan's definition of "Environmental Law" is sufficient ground on which to order Appellants to dismiss those causes of action with prejudice. However, the bankruptcy court also assessed the clause in EPA Settlement Provision Section A that required that environmental actions be brought against the Reorganized PEC "in its capacity as the self bond guarantor, owner, lessee, permittee, or operator of real property or a mining operation after the effective date." § V.E.6.a.i.A. As the bankruptcy court explained, this clause further supported the bankruptcy court's determination that Appellants' causes of action were not brought under the "Environmental Law" exception in Section A of the EPA Settlement Provisions. As the bankruptcy court explained, environmental statutes like the ones it names when defining "Environmental Law" "create obligations based on an entity's present relationship to the land." [Memorandum Opinion, ECF Doc. No. 18-2, A0752, 0764]

The bankruptcy court explained that the Chapter 11 Plan included the Environmental Law exception to make clear that the Reorganized PEC could not

avoid liability from claims that were based on its relationship to land after the Plan's Effective Date. It clarified that the Reorganized PEC could not argue that an environmental claim based on the Reorganized PEC's *present* relationship to the land was discharged under the Chapter 11 Plan simply because the conduct that gave rise to the claim occurred prior to the effective date. This essentially stated what would have been true even if the Chapter 11 Plan had not included the provision: certain environmental statutes impose liability on a current landowner or operator based solely on current conditions on their land. For example, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) "creates a claim running with the land that depends not at all on the debtor's actions before or during the reorganization." [Memorandum Opinion, ECF Doc. No. 18-2, at A0762 (quoting In re CMC Heartland Partners, 966 F.2d 1143, 1146 (7th Cir. 1992)]

By contrast, Appellants' own arguments make clear that they seek remedies from the Reorganized PEC due to PEC's past actions, including the "intentional promotion of [their products] with knowledge of the public health hazard." [Appellants' Opening Brief, ECF No. 18, at 40] Appellants are attempting to sue the Reorganized PEC based on the pre-Effective Date conduct of PEC, not based on the Reorganized PEC's present relationship to the land.

## ii. Section B of the EPA Settlement Provisions

Another type of claim exempt from discharge under the Chapter 11 Plan was "any claim of a Governmental Unit . . . under any Environmental Law, or other applicable police or regulatory law, in each case that, in accordance with the Bankruptcy Code and bankruptcy law, arises from the mining operation of any Reorganized Debtor." Plan § V.E.6.a.i.B, ECF No. 18-1, at A0140. The bankruptcy court's analysis of this provision considered whether Appellants' causes of action (1) were brought in accordance with their police powers, and (2) arise from the Reorganized PEC's mining operations. The bankruptcy court did not abuse its discretion in finding that the causes of action were not brought pursuant to Appellants' police powers and that they did not arise from the mining operations of the Reorganized PEC.

### 1. Police or Regulatory Law

The Parties dispute the standard of review that applies to the question of whether Appellants were exercising their police powers when they sued the Reorganized PEC. PEC urges me to follow the Eighth Circuit rule that a district court reviews a bankruptcy court's interpretation of a confirmed Chapter 11 Plan for abuse of discretion. Appellants, on the other hand, cite a Second Circuit case, In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig., for the proposition that I should review the bankruptcy court's evaluation of the so-called "police

power" exception *de novo*. 488 F.3d 112 (2d Cir. 2007). The case Appellants cite is not controlling or on point here. In that case, the Second Circuit was reviewing a district court's interpretation of the term as it appeared in a statute. See Id. ("We have never had occasion to define the parameters of a governmental unit's police or regulatory power in the context of [28 U.S.C.] section 1452.").

Though the bankruptcy court cites to the Bankruptcy Code's "police and regulatory" power exception to the automatic stay of actions against debtors, it does so to "guide" its own interpretation of the confirmed Chapter 11 Plan in this case. [Memorandum Opinion, ECF Doc. No. 18-2, A0752, 0766 (citing 11 U.S.C. § 362(b)(4))] The bankruptcy court then applies the pecuniary interest test as it interprets the Chapter 11 Plan's police power exemption. Id. Because the bankruptcy court conducted its assessment of the meaning of "police or regulatory law" in order to interpret the confirmed Chapter 11 Plan, I will review the bankruptcy court's findings for abuse of discretion.

As Appellants note, the bankruptcy court reached a different determination than another court reached on the same issue. Last March, Judge Chhabria in the Northern District of California found that Appellants' causes of action—as alleged against Chevron Corporation, another defendant in the suits—were "aimed at protecting the public safety and welfare and brought on behalf of the public." [See Appellants' Notice of Supplemental Authority, ECF Doc. No. 25, at 33 (alerting

me to the Order Granting Motions to Remand, <u>Cty. of San Mateo v. Chevron Corp.</u>, 294 F. Supp. 3d 934, 939 (N.D. Cal. 2018))]  Judge Chhabria concluded that the lawsuits, as filed against defendant Chevron, were an exercise of Appellants' police powers. <u>Id.</u>

Without commenting on the merits of the <u>Chevron</u> ruling Appellants cite, I find that the bankruptcy court here did not abuse its discretion though it reached a different conclusion than the Northern District of California District Court.

The bankruptcy court fully explained its finding that Appellants brought the PEC causes of action in order to obtain a pecuniary advantage over other creditors of the debtor's estate.  The bankruptcy court's finding that Appellants sought to obtain a pecuniary advantage meant that the actions were not brought pursuant to their police powers.  [<u>See</u> Memorandum Opinion, ECF Doc. No. 18-2, at A0766-67]

As evidence for its conclusion, the bankruptcy court cited Appellants' Complaints, prayers for relief, and characterizations of their causes of action.  The bankruptcy court noted that Appellants seek "disgorgement of all profits looking backward from the last fifty years."  [<u>See</u> Memorandum Opinion, ECF Doc. No. 18-2, at A0767]  The court also quoted Appellants' argument that they "filed the Complaints in order to ensure that the Defendants, as opposed to the [Appellants] and their residents and taxpayers, bear the costs and burdens of addressing the

foreseeable harm . . . caused by the defendants' products." [See Memorandum Opinion, ECF Doc. No. 18-2, at A0767 (citing Appellants' Amended Objection, ECF Doc. No. 18-2, A0730, 0732)] The bankruptcy court ultimately found that Appellants had not shown that the tort actions they filed against PEC constitute an exercise of Appellants' police powers.

Appellants disagree with the bankruptcy court's police power finding, but they do not provide any substantive evidence or argument that the bankruptcy court abused its discretion. They cite no "relevant factor" that the court failed to cite, no "irrelevant factor" that got significant weight, and no "clear error in weighing the relevant factors" in determining that their PEC causes of action were not an exercise of their police or regulatory powers. See United States v. Campbell, 410 F.3d 456, 464 (8th Cir. 2005) (discussing the abuse of discretion standard). The other district and circuit case law that Appellants assert contradicts the bankruptcy court's finding is not binding on the bankruptcy court. The 8th Circuit case law that Appellants cite simply adopts a United States Supreme Court description of the police power. It is not contrary to the bankruptcy court's determination. See Frye v. Kansas City Missouri Police Dept., 375 F.3d 785, 791(8th Cir. 2004) (quoting Hill v. Colorado, 530 U.S. 703, 715 (2000)) ("It is a traditional exercise of the State's 'police powers to protect the health and safety of their citizens.'").

Furthermore, even if the bankruptcy court abused its discretion in its assessment that the PEC causes of action were not brought pursuant to a "police or regulatory law," the final result would not be different. This is because, in order to be exempt, Appellants' causes of action must "arise[] from the mining operation of any Reorganized Debtor." Plan § V.E.6.a.i.B, ECF No. 18-1, at A0140. The causes of action did not arise from the Reorganized PEC's mining operations.

## 2. Mining Operations of Reorganized Debtors

The bankruptcy court did not abuse its discretion when it found that Appellants' causes of action do not arise from the mining operations of the Reorganized PEC. Appellants argue that, because coal once mined from the mines that the Reorganized PEC now operates caused $CO_2$ emissions that exacerbated the effects of climate change, their claims arise from the mining operations of the Reorganized PEC.

Appellants' causes of action seek to impose liability on the Reorganized PEC for the alleged conduct of the pre-effective date PEC. These are not the kinds of claims that the EPA Settlement Provisions seek to preserve. As the bankruptcy court explained, "the focus of the negotiations concerning the EPA Settlement Provisions was to ensure that the Reorganized Debtors honored their obligations concerning the land post-emergence, such as reclamation obligations." [Memorandum Opinion, ECF Doc. No. 18-2, A0752, 0769]

Appellants seek to use EPA Settlement Provision Section B to bring conduct-based claims, rather than claims based on the Reorganized PEC's relationship to the land. They argue that the Section B provides an avenue for claims that "arise from mining operations that the Reorganized Debtors own." [See Appellants' Opening Brief, ECF No. 18, at 29] Appellants' addition of the word "own" is significant. It may well be the case (though I do not reach those merits here) that the harm Appellants allege arises from previous mining operations at the site the Reorganized PEC now owns or operates. But under the Chapter 11 Plan the bankruptcy court interpreted, it is the Reorganized PEC's mining operations themselves, and not past mining activity at the Reorganized PEC's mine, that must give rise to Appellants' alleged harm under Section B of the EPA Settlement Provisions.

The bankruptcy court points to other persuasive evidence that supports its position. For example, the provision is written in the present tense, indicating it pertains only to present activity. In addition, Section B lacks any reference to "claims based on acts or omissions prior to the Effective Date." [Memorandum Opinion, ECF Doc. No. 18-2, at A0768] Conversely, Section A, which in part was meant to cover pre-Effective Date activity, contained language to that effect. The absence in Section B of language referring to acts or omissions prior to the

Effective Date further suggests that Section B is not meant to save claims pertaining to pre-Effective Date activity.

## IV.    Conclusion

I find that the bankruptcy court's determination that Appellants' First Causes of Action were claims was correct as a matter of law.  I further find that the bankruptcy court did not abuse its discretion in ruling that Appellants' remaining pre-petition or pre-Effective Date claims were discharged.

As a result, the bankruptcy court's order enjoining Appellants from prosecuting the PEC causes of action and directing that Appellants promptly dismiss the PEC causes of action with prejudice is affirmed.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 29th day of March, 2019.